# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

JENNIFER ARMSTRONG, :

        Plaintiff,

Case No. 3:11-cv-206

District Judge Timothy S. Black
Magistrate Judge Michael R. Merz

-vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

        Defendant. :

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict

(now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged

in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on June 1, 2006, alleging disability from September 28, 2005, due to type 1 diabetes, retinopathy, asthma, hyperthyroidism, poor kidney function, glaucoma, gastroparesis, elevated anti-nuclear antibodies, protein S deficiency, diabetic trigger fingers, carpal tunnel syndrome, ovarian syndrome, removal of precancerous uterus cells, anxiety, and depression. PageID 157-59; 191. The Commissioner denied Plaintiff's application initially and on reconsideration. PageID 120-22; 124-30. Administrative Law Judge James Knapp held a hearing, PageID 78-115, following which he determined that Plaintiff is not disabled. PageID 36-51. The Appeals Council denied Plaintiff's request for review, PageID 27-29, and Judge Knapp's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Knapp found that Plaintiff has severe diabetes mellitus, lumbar degenerative disc disease, moderate bilateral carpal tunnel

syndrome, exogenous obesity, recurrent asthma secondary to environmental allergies, and a depressive disorder, but that she does not have an impairment or combination of impairments that meets or equals the Listings. PageID 42, ¶ 3; PageID 45, ¶ 4. Judge Knapp also found that Plaintiff has the residual functional capacity to perform a reduced range of light work. PageID 46, ¶ 5. Judge Knapp then used section 202.21 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. PageID 50, ¶ 10. Judge Knapp concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. PageID 51.

Plaintiff challenges the Commissioner's decision on three grounds. (Doc. 8). Specifically, Plaintiff alleges that the Commissioner erred by failing to properly apply the treating physician rule to the opinions of her treating physician Dr. Bennett and her treating psychologist Dr. Payne, by failing to adequately consider her obesity, and by failing to properly evaluate her credibility. *Id.*

The record contains a copy of Plaintiff's voluminous treatment notes from the Joslin Diabetes Center dated March 2004 through January 2008. PageID 951-1078; 1080-96. Those records reveal that Plaintiff's health care providers at that facility monitored Plaintiff's diabetes including her use of an insulin pump. *Id.* On January 10, 2008, Dr. Glowinenka of the Joslin Diabetes Center reported that Plaintiff had admitted to taking her insulin pump off numerous times and not taking her insulin shots very frequently, she had slowly improved in her depression and had started to take care of her blood sugars again, and her blood sugars had appeared to be quite elevated throughout the day although recently they were improving as she had become more compliant with her regimen. *Id.* Dr. Glowinenka also reported that Plaintiff had very mild peripheral neuropathy,

4

she had more generalized complaints of numbness and tingling in her hands or feet which were not documented by her EMG/nerve conduction studies, and her physical exam was entirely normal. *Id.*

Plaintiff consulted with orthopedist Dr. Bamberger in January, 2005, who reported that Plaintiff had problems with her left thumb with clicking and popping that had recently gotten worse, she exhibited tenderness over the A1 pulley, there were no signs of carpal tunnel, and that she complained of some early possible adhesive capsulitis to her right shoulder. PageID 757. On October 6, 2005, Dr. Bamberger noted that an injection of Plaintiff's thumb helped, but that she now complained of increased difficulties with her middle finger which he injected. PageID 754. Dr. Bamberger also reported that Plaintiff had carpal tunnel of pregnancy. *Id.* Dr. Bamberger again injected Plaintiff's thumb in March 2006. PageID 751. In September 2006, Dr. Bamberger noted that Plaintiff complained of trigger fingers in the long fingers of both hands and exhibited catching of the bilateral long fingers in flexion and a nodule of the A1 pulley. PageID 753. Dr. Bamberger also noted that Plaintiff had carpal tunnel symptoms including numbness and tingling in both hands. *Id.* Dr. Bamberger injected Plaintiff's long trigger fingers bilaterally. *Id.*

Plaintiff underwent a cardiac evaluation by cardiologist Dr. Salvaji in July and August. 2006. See PageID 461-69; 486-87. On August 4, 2006, Dr. Salvaji reported that Plaintiff's echocardiogram revealed diastolic dysfunction and that her diagnoses were dyspnea, rule out atypical angina, abnormal EKG and echocardiogram, rule out significant coronary artery disease, family history of premature coronary artery disease, and pulmonary hypertension, and type I diabetes. *Id.*

Treating pain specialist Dr. Kay began treating Plaintiff in January 2008. PageID 1106-13. At that time, Dr. Kay reported that Plaintiff complained of bilateral leg and left hand pain,

had carpal tunnel syndrome, had undergone a carpal tunnel release of the left hand, had a trigger finger release, and that an EMG revealed diabetic neuropathy. *Id.* Dr. Kay also reported that Plaintiff was somewhat obese, weighed 207 pounds, had a normal gait, had a normal back and neurological examination of her legs, exhibited decreased pulses in both feet although circulation appeared intact, and that her left wrist showed mild decreased range of motion. *Id.* Dr. Kay identified Plaintiff's diagnoses as diabetic neuropathy and status post carpal tunnel release, left hand for carpal tunnel syndrome with good results. *Id.* Dr. Kay reported on February 21, 2008, that Plaintiff was doing well as afar as her pain was concerned, she was taking very little medication, hear hands were fine, she complained of increased leg pain at night and right hip pain, she had tenderness of the right hip, and that he injected her hip. *Id.* Plaintiff continued to receive treatment from Dr. Kay who injected her hip and right IS joint in August, 2008. *Id.*

Plaintiff consulted with pulmonologist Dr. Bellus in January, 2007, who reported that Plaintiff's lungs were clear and that his impression was recurrent dyspnea, cough, mucous production, and wheezing probably secondary to recurrent exacerbation of reversible obstructive airways disease, acute and chronic rhinitis with associated sinobronchial syndrome, type I diabetes mellitus presently on an insulin pump, hypothyroidism by history, diabetic retinopathy and gastroparesis, history of irritable bowel syndrome, and history of preeclampsia. PageID 722-28. On February 7, 2007, Dr. Bellus reported that Plaintiff underwent a pulmonary function study which revealed no evidence of obstructive mechanics of the large and small airways, no significant improvement in airflow, and a mild degree of restrictive mechanics. *Id.* Dr. Bellus opined that Plaintiff was in need of an aggressive dietary program for weight reduction. *Id.* Dr. Bellus noted on March 13, 2007, that Plaintiff did not return or cancel her scheduled appointment. *Id.*

6

Plaintiff underwent a second cardiac evaluation by Dr. Young on February 20, 2008, who reported that Plaintiff had an abnormal resting electrocardiogram demonstrating a right axis deviation and possible old anteroseptal myocardial infarction. PageID 1101-05. On April 6, 2008, Dr. Young reported that he had reviewed Plaintiff's stress test and did not see an old heart attack of a risk for a future heart attack. *Id.*

Dr. Bennett has been Plaintiff's long-term treating physician, treating her since at least June 1993. See, *e.g.,* PageID 1165-1200.

On September 27, 2006, Dr. Bennett reported that Plaintiff's diagnoses included type I diabetes with insulin pump, hypothyroidism, asthma. Protein-S deficiency, diabetic retinopathy, nephropathy, anxiety and depression, glaucoma and cataract left eye, elevated cholesterol, carpal tunnel syndrome, trigger finger, and restless leg syndrome, that it was extremely difficult for her to function on a daily basis, she could not stand/walk for any length of time due to ther diabetic neuropathy and asthma, that she suffered with severe fatigue, and that she was unable to work for the past full year and would likely never be able to work again due to her medical conditions. PageID 1188.

Dr. Bennett reported on October 15, 2007, that she first treated Plaintiff on June 18, 1993, and last treated her on September 26, 2007, her diagnoses were type I diabetes, hypothyroidism, asthma, proteinuria, diabetic retinopathy, cataract, glaucoma, bilateral trigger fingers, diabetic neuropathy, protein S deficiency, GERD, polycystic ovary, depression, carpal tunnel syndrome, and anxiety, that her prognosis was poor and would probably worsen, that laboratory work, echocardiograms, EKGs, venous studies, pulmonary function studies, colonoscopy, EGD and laparoscopy supported the diagnoses, and that Plaintiff had pain in her legs and feet,

7

hands, fingers, wrists, eyes, back, and neck that was eight on a scale of zero to ten, and that she had fatigue at nine on a scale of zero to ten. PageID 1173-81. Dr. Bennett also reported that Plaintiff was able to sit and stand/walk each for zero to one hour in an eight-hour day, that it was recommended that she not sit continuously, and that she was able to lift/carry up to ten pounds frequently and up to twenty pounds occasionally, and that she was able to carry up to five pounds frequently. *Id.* Dr. Bennett noted that Plaintiff was capable of tolerating low stress and that she would need to take unscheduled breaks every thirty minutes for fifteen to twenty minutes and would be absent more than three times a month due to her impairments. *Id.*

In August 2008, Dr. Bennett reported that she had been treating Plaintiff every one to three months since June 1993 for type I diabetes, hypothyroidism, asthma, IBS, anxiety, GERD, fatigue, insomnia, iron deficiency anemia, depression, peripheral neuropathy, sciatica, degenerative disc disease, and proteinuria. PageID 1165-72. Dr. Bennett also reported that Plaintiff's prognosis was poor, and that she had neck pain radiating down her arm, high blood sugars, was stressed, had numb hands and fingers, experienced fatigue, had shortness of breath and wheezing, and that she now had back pain. *Id.* Dr. Bennett noted that Plaintiff's pain was eight on a scale of zero to ten, her fatigue was nine on a scale of zero to ten, and that her pain could not be completely relieved with medication without unacceptable side effects. *Id.* Dr. Bennett opined that Plaintiff was able to sit and stand/walk each for one hour in an eight-hour day, it was necessary that she not sit continuously in a work setting, she was able to lift/carry up to five pounds occasionally, she would be required to take unscheduled breaks every one to two hours for one-half to one hour, and that she would be absent three times a month due to her impairments. *Id.* Dr. Bennett also opined that Plaintiff's limitations dated to December 1982. *Id.*

In addition to her physical impairments, Plaintiff alleges that she has mental impairments. The record contains a copy of treating psychologist Dr. Payne's treatment notes dated June 21, 2005, through January 20, 2009. See, *e.g.,* PageID 1328-73.

Dr. Payne reported on June 29, 2006, that he first treated Plaintiff on April 5, 2004, that her speech was sometimes pressured, she had some depressive periods and crying spells, she was oriented, had an average IQ, fair concentration, moderate insight, and good judgment. PageID 537-40. Dr. Payne also reported that Plaintiff had "OK" abilities to perform most work-related mental activities, was easily irritated, and displayed some anger. *Id.*

On November 9, 2006, Dr. Payne reported that he first saw Plaintiff in April 2004, he has treated her for depression, she does not have a thought disorder, her judgment is good, her IQ and memory are average, her pace is below average, and that her restrictions are primarily physical. PageID 534-36. Dr. Payne also reported that Plaintiff's depressive symptoms had persisted for two years, she had shown moderate improvement, and that she was mildly to moderately impaired. *Id.* Dr. Payne noted on December 22, 2006, that he had been treating Plaintiff since April, 2004, he saw her every two weeks, her diagnoses were adjustment disorder, dysthymic disorder, diabetes, and obesity, and that he had assigned her a GAF of 57. PageID 620-28. Dr. Payne also noted that Plaintiff exhibited mood disturbance, emotional lability, periodic anhedonia, feelings of guilt/worthlessness, a blunt, flat, or inappropriate affect, decreased energy, and difficulty thinking or concentrating. *Id.* Dr. Payne opined that Plaintiff had, at worst, moderate limitations with the exception that she had marked limitation in her ability to complete a normal workweek, that she experienced episodes of deterioration or decompensation, and that she was capable of tolerating moderate stress. *Id.*

On March 6, 2009, Dr. Payne reported that he had been providing treatment for Plaintiff related to her depression and anxiety since April 2004 he saw her about once every two weeks, her condition remained consistent with dysthymic disorder and adjustment disorder with anxiety and depressed mood, and that he had assigned her a GAF of 57 indicative of a moderate impairment. PageID 1323-24. Dr. Payne also reported that Plaintiff's medical conditions and disorders were significant factors in her condition, the positive clinical findings included mood disturbance, periodic anhedonia, feelings of guilt/worthlessness, difficulty thinking or concentrating, blunt, flat or inappropriate affect, and decreased energy, and that her primary symptoms included a depressed affect, anxiety, and worry. *Id.* Dr. Payne noted that his mental status examinations have revealed that Plaintiff had a marked impairment in her ability to complete a normal workweek without interruption for psychologically-based symptoms as well as her ability to perform at a consistent pace without an unreasonable number and length of rest periods, that she was moderately limited in her abilities to: maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance; be punctual with customary tolerance; get along with co-workers or peers; and to respond appropriately in the work setting. *Id.* Dr. Payne also noted that Plaintiff had mild limitations in her abilities to: understand, remember, and carry out detailed instructions; work in coordination with or in proximity to others; make simple work-related decisions; interact appropriately with the general public; and to set realistic goals or make plans independently. *Id.* Dr. Payne opined that Plaintiff would experience episodes of deterioration or decompensation, particularly in situations involving high levels of stress, and that she has been unable to participate in a full-time job that requires activity on a sustained basis for the last several years and certainly since September 25, 2005. *Id.*

As noted above, Plaintiff alleges that the Commissioner erred by failing to properly apply the treating physician rule to the opinions of her treating physician Dr. Bennett and her treating psychologist Dr. Payne, by failing to adequately consider her obesity, and by failing to properly evaluate her credibility. (Doc. 8).

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009). "One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Id.*, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

"The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley,* 581 F.3d at 406*, quoting, Wilson,* 378 F.3d at 544*.* "On the other hand, a Social Security Ruling[1] explains that '[i]t is an error to give an opinion controlling weight simply because it is the

---

FN 1. Although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

11

opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 582 F.3d at 406, *citing, Wilson,* 378 F.3d at 544, *citing* 20 C.F.R. § 404.1527(d)(2).

"Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R. §404.1527(d)(2). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley,* 581 F.3d at 406-07, *citing,* Soc.Sec.Rule 96-2p, 1996 WL 374188 at *5. "The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."

*Blakley,* 581 F.3d at 407, *citing, Wilson,* 378 F.3d at 544. "Because the reason-giving requirement

12

exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley, supra, quoting, Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

Before rejecting Dr. Bennett's opinion, Judge Knapp properly identified the standard he was required to apply to that opinion. PageID 47. In other words, he recognized the treating physician rule. *Id.* However, Judge Knapp then determined that Dr. Bennett's opinion was not entitled to any controlling, deferential, or other preferential weight because it was out of proportion to the objective findings.

Although Dr. Bennett essentially opined that Plaintiff is disabled and has been since 1982, her opinion is inconsistent with the objective findings in the record. For example with respect to Plaintiff's allegation of back pain, in February 2005 consulting neurosurgeon Dr. West reported that the only positive clinical finding Plaintiff exhibited was tenderness in the lower lumbar region and a February 3, 2005, CAT scan revealed, at worse, some bulging disc. PageID 328-29. Further, as to Plaintiff's alleged hand and finger impairments, as noted above, Dr. Bamberger treated Plaintiff's impairments relatively conservatively with injections, to which she apparently responded, and Dr. Bamberger failed to report that there were any restrictions on Plaintiff's functioning. See PageID 753-56. Further, as also noted, Dr. Glowinenka of the Joslin Diabetes Center, Plaintiff's treating diabetes specialist, opined that Plaintiff exhibited only mild physical findings. Further, although the cardiologists with whom Plaintiff consulted reported some abnormal clinical findings,

13

neither recommended any specific treatment and neither opined that Plaintiff was limited in her functioning. Moreover, treating specialists Drs. Bamberger, Kay, and Bellus reported, at worst, some mild to moderate findings, none recommended anything more than conservative treatment, and none opined that Plaintiff has functional limitations as the result of any of her various alleged impairments. Finally, Dr. Bennett's opinion is inconsistent with the opinions of the reviewing physicians. See, *e.g.,* PageID 619; 628-35.

Under these facts, the Commissioner had an adequate basis for rejecting Dr. Bennett's opinion and for giving it little, if any weight.

Judge Knapp also rejected Dr. Payne's opinion that Plaintiff is disabled. In doing so, Judge Knapp noted that Dr. Payne's December 2006 opinion was consistent with an ability to perform low stress jobs that involved limited interpersonal contact. PageID 48. Judge Knapp went on to note that in March 2009 Dr. Payne opined that Plaintiff was unable to work, but that his opinion was not supported by any changes in the clinical data nor by his progress notes. *Id.*

This Court cannot say that Judge Knapp erred in his evaluation of Dr. Payne's March, 2009 opinion or in his rejection of that opinion. A review of Dr. Payne's office notes reveals, first, that Plaintiff frequently did not keep her appointments. See, *e.g.,* PageID 1328-73. Nevertheless, those notes also reveal that over time, Dr. Payne documented that Plaintiff had problems with a friend, was frustrated, was overwhelmed by being a mother, had high expectations of her husband, went through grieving the death of her brother, was not wanting to go back to work, had problems with her mother, and was dealing with childhood abuse issues, but that she was, at worst, "somewhat stressed", calm, satisfied with her weight loss, and that she had a good mood. *Id.* Dr. Payne's office notes simply do not support his conclusion that Plaintiff is disabled by a mental impairment. In

addition, Dr. Payne's opinion is inconsistent with the reviewing mental health specialists' opinions. See, *e.g.,* PageID 471-84; 618. Finally, Dr. Payne's opinion in inconsistent with Plaintiff's self-reported activities which include being a stay-at-home mother, driving, doing things with her three-year old daughter, cooking, doing the dishes, occasionally sweeping, doing laundry, grocery shopping, going to the mall, attending religious services on religious holidays, and visiting her father. PageID 96-98. Accordingly, the Commissioner had an adequate basis for rejecting Dr. Payne's opinion that Plaintiff is disabled by her mental impairment.

Plaintiff argues next that the Commissioner erred by failing to adequately consider her obesity. Associated with this argument is Plaintiff's argument that the Commissioner erred by failing to consider Social Security Ruling (SSR) 02-1p, 2000 WL 628049 (Sept. 12, 2002).

Obesity no longer qualifies as a "listed impairment" but SSR 02-1p "instruct[s] adjudicators to consider the effects of obesity not only under the listings bus also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity. SSR 02-1p, 2000 WL 628049 at *1. The Sixth Circuit has said that it is "a mischaracterization to suggest that [SSR 02-1p] offers any particular procedural mode of analysis for obese disability claimants. *Coldiron v. Commissioner of Social Security,* 391 Fed.Appx. 435, 442 (6th Cir. 2010), quoting *Bledsoe v. Barnhart,* 165 Fed.Appx. 408, 412 (6th Cir. 2006). Instead, SSR 02-1p provides that "obesity in combination with other impairments, 'may' increase the severity of the other limitations." *Coldiron, supra,* citing *Bledsoe, supra.* The ALJ's failure to engage in an exhaustive discussion of a claimant's obesity "likely stems from the fact that [the claimant] failed to present evidence of any functional limitations resulting specifically from ... obesity. See *Essary* v. *Commissioner of Social Security*, 114 F.Appx 662, 667 (6th Cir. 2004).

15

At this juncture, this Court notes that Plaintiff did not include obesity as an impairment in her application for benefits. Additionally, none of Plaintiff's treating or consulting physicians indicated that Plaintiff's obesity caused any functional limitations. The Court notes further, that at the hearing, Judge Knapp discussed Plaintiff's obesity-related surgery with her, including complications from that surgery. PageID 82; 85-86. Finally, the Court notes that when Judge Knapp and her counsel each gave Plaintiff the opportunity to explain how other of her impairments affected her abilities to function, Plaintiff did not mention her obesity, PageID 101, 104, nor did Plaintiff's counsel include any limitations due to obesity in his hypothetical questions to the VE. PageID 112-13. Nevertheless, and contrary to Plaintiff's argument, Judge Knapp discussed in his decision Plaintiff's obesity and various issues associated with that obesity. See, PageID 41, ¶ 3 (Plaintiff's obesity is a severe impairment); PageID 43 (same); PageID 44 (discussion of Plaintiff's history of morbid obesity including treatment and her efforts to lose weight); PageID 49 (discussion of surgical treatment success). While Judge Knapp did not engage in any detailed discussions of Plaintiff's obesity, that is likely because she failed to present any evidence or allege any functional limitations resulting specifically from obesity.

The Commissioner did not err by failing to consider Plaintiff's obesity.

Plaintiff's final argument is that the Commissioner erred by failing to properly evaluate her credibility.

It is, of course, for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 247 (6th Cir. 2007)(citations omitted). An administrative law judge's credibility findings are entitled to considerable deference and should not be lightly discarded. *See, Villarreal v. Secretary*

*of Health and Human Services,* 818 F.2d 461 (6th Cir. 1987); *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230 (6th Cir. 1993). Determination of credibility related to subjective complaints rests with the ALJ and the ALJ's opportunity to observe the demeanor of the claimant is invaluable and should not be discarded lightly. *Gaffney v. Bowen,* 825 F.2d 98 (6th Cir. 1987).

In many disability cases, the cause of the disability is not necessarily the underlying condition itself, but rather the symptoms associated with the condition. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 247, (6th Cir. 2007). Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. *Rogers, supra* (citations omitted). First, the ALJ will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. *Id.* (citation omitted). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities, *Id.* Stated differently, there is a two-step process for evaluating pain. First, the individual must establish a medically determinable impairment which could reasonably be expected to produce the pain. *See, Jones v. Secretary of Health and Human Services,* 945 F.2d 1365 (6th Cir. 1991), *citing, Duncan v. Secretary of Health and Human Services,* 801 F.2d 847 (6th Cir. 1986). Second, the intensity and persistence of the alleged pain are evaluated by considering all of the relevant evidence. *See, Jones,* 945 F.2d at 1366-70.

In analyzing Plaintiff's credibility, Judge Knapp noted that Plaintiff's various conditions and symptoms have been managed primarily with conservative measures, she has responded to treatments, her various impairments are well-controlled, and that she has admittedly

17

sometimes been non-compliant. PageID 49. Judge Knapp also noted that medication relieves Plaintiff's alleged pain. *Id.*

As noted above, the Commissioner had an adequate basis for rejecting Dr. Bennett's opinion primarily because it is inconsistent with the opinions of the other physicians' opinions as well as the other evidence of record. For those same reasons, as well as the above mentioned factors which Judge Knapp identified, the Commissioner had an adequate basis for rejecting Plaintiff's allegations of disabling symptoms from her various alleged impairments.

The Court's duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

February 6, 2012                                    s/ **Michael R. Merz**
                                                                                United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).